**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MAURICIO CLAROS and DAMARIS MUNOZ,

Plaintiffs

v.

MARVIN'S REFRIGERATION CORP., MARVIN
TREJOS and GRELY MORENO GONZALEZ,

Defendants.

**Case No.** 1:24-cv-1197(GTS/CFH)

JURY TRIAL REQUESTED

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.   Defendants Marvin's Refrigeration Corp., Marvin Trejos, and Grely Moreno Gonzalez (collectively "Defendants") obtained forced labor from plaintiffs Mauricio Claros and Damaris Munoz (collectively "Plaintiffs") for over four months by way of debt bondage.

2.   In late 2021, Defendants recruited Plaintiffs to work in their commercial refrigeration business and arranged Plaintiffs' travel to New York. However, once Plaintiffs arrived to Trejos and Moreno Gonzalez's property in Kerhonkson, New York in February 2022, Trejos informed them that they owed him over $20,000, which they needed to repay as soon as possible. Defendants put Plaintiffs to work shortly after they arrived in New York.

3.   Plaintiffs and several other co-workers lived in Trejos and Moreno Gonzalez's house in rural Kerhonkson, NY, which also served as an appliance warehouse and repair shop. They worked from morning until night, usually at least six days a week, doing a range of tasks including refurbishing used refrigeration panels and other materials in the garage and on the grounds of the Kerhonkson house, making deliveries and performing installations of appliances in multiple states, and performing domestic labor for Defendants.

1

4.  Defendants constantly surveilled Plaintiffs as they worked, via cameras throughout the Kerhonkson property and through a phone app when Plaintiffs were on the road.

5.  Throughout their employment, Plaintiffs typically worked over 65 hours per week. Defendants paid them paltry sums in cash after deducting large amounts for their purported debt and other expenses imposed by Defendants. Plaintiffs felt obligated to continue working to pay off the debt claimed by Defendants, but with the "interest" charged by Defendants, Plaintiffs' debt kept increasing.

## JURISDICTION AND VENUE

6.  This action arises under the Trafficking Victims Protection Act, 18 U.S.C. § 1583 *et seq.* ("TVPA"); the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the New York Labor Law § 650 *et seq.* ("NYLL"); and the New York Social Services Law § 483-bb.

7.  This Court has subject matter jurisdiction pursuant to the TVPA, 18 U.S.C. § 1595; the FLSA, 29 U.S.C. § 216; and 28 U.S.C. §§ 1331 and 1337.

8.  With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the state law claims derive from a common nucleus of operative fact and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.  Venue is appropriate in the Northern District of New York pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred primarily within this judicial district.

## THE PARTIES

10. Plaintiff Mauricio Claros is an adult individual and resident of New York.

11. Plaintiff Damaris Munoz is an adult individual and resident of New York.

12. At all times relevant to this Complaint, Plaintiffs were employees of Defendants as that

term is defined by

    a.   the FLSA, 29 U.S.C. § 203(e)(1), and

    b.   the NYLL § 190.

13.    At all times relevant to this Complaint, Plaintiffs were employees engaged in commerce or the production of goods for commerce.

14.    At all times relevant to this Complaint, Plaintiffs were employees in an enterprise engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. § 203 *et seq.*

<u>Defendant Marvin's Refrigeration Corp.</u>

15.    Defendant Marvin's Refrigeration Corp., ("Marvin's Refrigeration") is a domestic corporation doing business in the State of New York, with places of business in Ulster County at 537 Samsonville Rd., Kerhonkson, NY 12446 and Queens County at 88-32 138th Street, 2nd Floor, Jamaica, NY 11435.

16.    Defendant Marvin's Refrigeration Corp. provides commercial and residential refrigeration sales and services including repair, maintenance, and installation of new and used appliances.

17.    At all times relevant to the Complaint, Marvin's Refrigeration was an employer of each of the Plaintiffs as that term is defined by

    a.   the FLSA, 29 U.S.C. § 203(d), and by

    b.   NYLL § 190.

<u>Defendant Marvin Trejos</u>

18.    Defendant Marvin Trejos is a resident of the State of New York and is the owner and principal of Marvin's Refrigeration.

19.     At all times relevant to the Complaint, Defendant Trejos had the power, and did in fact exercise such power, to hire and fire employees, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all employees, including Plaintiffs.

20.     At all times relevant to the Complaint, Defendant Trejos had the power, and did in fact exercise such power, to create pay practices and policies.

21.     At all times relevant to the Complaint, Defendant Trejos had the power to stop any illegal pay practices.

22.     At all times relevant to the Complaint, Defendant Trejos actively managed, supervised, and directed the business affairs and operations of Marvin's Refrigeration.

23.     At all times relevant to the Complaint, Marvin Trejos was an employer of each of the Plaintiffs as that term is defined by

   a.       the FLSA, 29 U.S.C. § 203(d), and

   b.       NYLL § 190.

Defendant Grely Moreno Gonzalez

24.     Defendant Grely Moreno Gonzalez is a resident of the State of New York.

25.     Upon information and belief, Moreno Gonzalez is an owner and manager of Marvin's Refrigeration.

26.     At all times relevant to the Complaint, Defendant Moreno Gonzalez had the power, and did in fact exercise such power, to hire and fire employees, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all employees, including Plaintiffs.

27.     At all times relevant to the Complaint, Defendant Moreno Gonzalez had the power, and

did in fact exercise such power, to create pay practices and policies.

28. At all times relevant to the Complaint, Defendant Moreno Gonzalez had the power to stop any illegal pay practices.

29. At all times relevant to the Complaint, Defendant Moreno Gonzalez actively managed, supervised, and directed the business affairs and operations of Marvin's Refrigeration.

30. At all times relevant to the Complaint, Grely Moreno Gonzalez was an employer of each of the Plaintiffs as that term is defined by

c.      the FLSA, 29 U.S.C. § 203(d), and

d.      NYLL § 190.

31. At all relevant times, Defendants had at least two or more employees.

32. Upon information and belief, Defendants, individually and collectively, grossed more than $500,000 per year in revenue for each of the past five (5) calendar years.

33. Upon information and belief, Defendants are, individually and collectively, an enterprise engaged in commerce.

## STATEMENT OF FACTS

34. Plaintiffs began working for Defendants shortly after arriving in Kerhonkson, New York in February 2022.

35. Mr. Claros's regular work duties included repairing, delivering, and installing and uninstalling commercial grade refrigerators for Defendants' customers such as restaurants, flower shops, and other businesses. Defendants required Mr. Claros to travel regularly to pick up new and secondhand refrigerators that Defendants purchased to refurbish. This work required travel throughout New York, New Jersey, Connecticut, and even to Washington, DC.

36.   Mr. Claros typically worked five or six days per week from approximately 7:30 a.m. or 8:30 a.m. until 8:30 p.m. to 11 p.m., with no lunch break. On a few occasions, his workday ended earlier. He typically worked approximately 60 to 90 hours per week.

37.   Although Defendants verbally informed Mr. Claros that he would be paid a weekly rate of $750, which is less than minimum wage for 60-90 hours, Defendants actually paid him even less.

38.   Ms. Munoz's work duties included organizing tools and materials; inspecting and discarding items that were no longer useable; cleaning refrigeration parts; and assisting with deliveries and installations at customer locations. Plaintiff Munoz also worked as a housekeeper for Defendants, cooking and cleaning.

39.   She typically worked six or seven days per week, approximately 75 to 101 hours. She made breakfast and lunch for Defendants, starting around 5 a.m., and then performed other domestic tasks or tasks related to the refrigeration business until approximately 7 p.m. to 9 p.m., with no lunch break. Sometimes, after returning to Kerhonkson from customer sites, she spent an additional hour reheating and serving dinner. On Sundays, she performed housekeeping and cooking duties for Defendants for about five hours.

40.   Although Defendants represented to Ms. Munoz that she would be paid a weekly rate of $720, which is less than minimum wage for 75-101 hours, Defendants actually paid Ms. Munoz even less.

41.   Defendants imposed unauthorized deductions from Plaintiffs' wages, including for their purported debt, rent, electricity, food, phones that were used for work, vehicle use, and gas.

42.   After these deductions, which primarily benefited Defendants and for which Defendants had not obtained Plaintiffs' written authorization, Plaintiffs were left with varying amounts

of wages, but generally no more than $200 per week between the two of them.

43.    Defendants kept close tabs on Plaintiffs' whereabouts and productivity, requiring Plaintiffs to send them picture and video updates about the progress on their work tasks multiple times each day. Defendants frequently called or texted Plaintiffs if they did not receive an update in the time frame they wanted.

44.    Defendants never paid Plaintiffs an additional hour of pay at the minimum wage rate for each day their workday spanned more than 10 hours, which was every workday (except Sundays for Ms. Munoz).

45.    Defendants never provided Plaintiffs with a written wage notice at the time of their hiring, or within 10 business days of their first day of employment, setting out their regular and overtime rates of pay and other information as required by the NYLL.

46.    Defendants never provided Plaintiffs with accurate written wage statements with their weekly payment of wages, setting forth their total pay, their hours during the pay period, and their regular and overtime rates of pay as required by the NYLL.

47.    Since Defendants failed to provide Plaintiffs with complete and accurate paystubs, they lacked the details necessary to understand their pay rate or track their hours, account for the amounts Defendants deducted from their wages for rent, food, utilities, and other reasons, or to understand their purported "debt." This resulted in unpredictable and illegally low weekly pay. Lack of these notices with pertinent information increased their dependence on Defendants and vulnerability to exploitation, as it was almost impossible for Plaintiffs to manage their budget, pay for basic necessities, and understand the contours of the debt Defendants claimed they owed.

48.    Had Plaintiffs received a legally compliant hiring or wage notice, they could have

discovered the violations of their rights sooner and avoided some of the harm they experienced.

## DEFENDANTS' COERCIVE SCHEME

49. Plaintiffs and their children lived in two rooms in Defendants' house and were forced to pay Defendants for rent, food, gas, electricity, and phone service.

50. Each week, after debts and expenses were deducted from their wages by Defendants, Plaintiffs were typically left with less than $200 for themselves.

51. This created a vicious cycle where Plaintiffs were forced to work long hours, performing strenuous physical labor. Plaintiffs felt obligated to continue working to pay off the debt Defendants claimed they owed, and Plaintiffs were left with too little money to become independent of Defendants' control.

52. Plaintiffs' movement depended on Defendants' permission as they relied on Defendants' vehicles to leave the premises, which were located in a rural area lacking public transport.

53. Defendants had cameras inside the home and outside around the property, where they constantly monitored Plaintiffs.

54. Defendants also required Plaintiffs to send them multiple reports on their work throughout each day.

55. With no social network in rural Ulster County, no transportation of their own, no private space of their own, only what little money remained after Defendants made excessive deductions from their already-subminimum wages, and very little free time and energy, Plaintiffs were almost entirely dependent on Defendants' good graces for their survival.

56. Defendants orchestrated Plaintiffs' debt and exerted this scheme of control over Plaintiffs in order to extract their labor.

## FIRST CAUSE OF ACTION

**Trafficking Victims Protection Act**
**Labor Trafficking with Respect to Peonage, Involuntary Servitude, and Forced Labor**

57.    Plaintiffs restate, re-allege, and incorporate by reference all of the preceding allegations as if fully set forth herein.

58.    Plaintiffs are authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a).

59.    In violation of 18 U.S.C. § 1590(a), Defendants knowingly recruited, transported, and obtained Plaintiffs for labor in violation of the prohibitions on peonage, involuntary servitude and forced labor.

60.    In violation of 18 U.S.C. § 1581, Defendants held Plaintiffs in a condition of peonage by compelling Plaintiffs to work for Defendants to pay off their purported debt owed to Defendants.

61.    In violation of 18 U.S.C. § 1584, Defendants coerced Plaintiffs into involuntary servitude by orchestrating their financial dependence on and debt to Defendants, doling out their earned wages in an unpredictable piecemeal manner, restricting their freedom of movement, and isolating them from alternative means of securing a livelihood.

62.    In violation of 18 U.S.C. § 1589, Defendants knowingly obtained forced labor from Plaintiffs by means of serious harm and threats of serious harm within the meaning of 18 U.S.C. § 1589(a)(2); and a scheme, plan, or pattern intended to cause Plaintiffs to believe that, if they did not perform such labor, they and their family would suffer severe financial harm, in violation of 18 U.S.C. § 1589(a)(4).

63.    Defendants used a scheme, plan, or pattern, intended to cause Plaintiffs to believe that if they did not perform labor, they would suffer serious harm, including the loss of financial

wherewithal to obtain basic necessities.

64.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Fair Labor Standards Act – Minimum Wage Violations

65.   Plaintiffs restate, re-allege, and incorporate by reference all of the preceding allegations as if fully set forth herein.

66.   Defendants willfully failed to pay Plaintiffs at least the applicable federal minimum wage for each hour worked, in violation of 29 U.S.C. § 206 *et seq*.

67.   Defendants made unlawful deductions from Plaintiffs' wages.

68.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wage compensation, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216 (b).

## THIRD CAUSE OF ACTION

### Fair Labor Standards Act – Overtime Wage Violations

69.   Plaintiffs restate, re-allege, and incorporate by reference all of the preceding allegations as if fully set forth herein.

70.   Defendants willfully failed to pay Plaintiffs overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

71.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime compensation, an additional equal amount as

liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216 (b).

## FOURTH CAUSE OF ACTION

### New York Labor Trafficking Claim

72.  Plaintiffs restate, re-allege, and incorporate by reference all of the preceding allegations as if fully set forth herein.

73.  As victims of the labor trafficking conduct prohibited by N.Y. Pen. L. § 135.35, Plaintiffs are authorized to bring this civil claim against Defendants pursuant to N.Y. Soc. Serv. L. § 483-bb(c).

74.  Defendants knowingly advanced and profited from acts in violation of N.Y. Pen. L. § 135.35.

75.  Defendants intentionally engaged in a scheme, plan or pattern to compel or induce Plaintiffs to engage in and continue to engage in labor activity by means of requiring Plaintiffs to repay a purported debt with the intent to defraud them.

76.  Due to Defendants' conduct, Plaintiffs are entitled to recover damages and reasonable attorney's fees.

## FIFTH CAUSE OF ACTION

### New York Labor Law – Minimum Wages

77.  Plaintiffs re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

78.  Defendants willfully violated Plaintiffs' rights by failing to pay them the applicable New York State minimum wage for each hour worked.

79.  Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from

Defendants, jointly and severally, their unpaid regular wages, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

## SIXTH CAUSE OF ACTION

### New York Labor Law – Overtime Wages

80. Plaintiffs restate, re-allege, and incorporate by reference all of the previous allegations as if fully set forth herein.

81. Defendants willfully violated Plaintiffs' rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek.

82. Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

## SEVENTH CAUSE OF ACTION

### New York Labor Law – Spread of Hours

83. Plaintiffs restate, re-allege, and incorporate by reference all of the previous allegations as if fully set forth herein.

84. Defendants willfully violated Plaintiffs' rights by failing to pay them an additional hour of pay at the minimum wage rate for days on which their workday spanned more than 10 hours or on days they worked multiple shifts.

85. Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid spread of hours compensation, liquidated

damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198 and 663.

## EIGHTH CAUSE OF ACTION

### New York Labor Law – Failure to Provide Accurate Hiring Notices

86.     Plaintiffs restate, re-allege, and incorporate by reference all of the previous allegations as if fully set forth herein.

87.     Defendants failed to supply Plaintiffs with an accurate hiring notice within 10 business days of their first day of employment, as required by NYLL § 195(1)(a).

88.     Due to Defendants' NYLL violations, Plaintiffs are each entitled to statutory damages as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

## NINTH CAUSE OF ACTION

### New York Labor Law – Failure to Provide Accurate Wage Statements

89.     Plaintiffs restate, re-allege, and incorporate by reference all of the previous allegations as if fully set forth herein.

90.     Defendants failed to supply Plaintiffs with an accurate wage statement with each payment of wages, as required by NYLL § 195(3).

91.     Due to Defendants' NYLL violations, Plaintiffs are each entitled to statutory damages as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION

### New York Labor Law – Unlawful Deductions

92.     Plaintiffs restate, re-allege, and incorporate by reference all of the previous allegations as if fully set forth herein.

93.     Defendants violated Plaintiffs' rights by deducting monies from their wages for a purpose

which was not primarily for Plaintiffs' benefit and which was without their voluntary written authorization and without written notice of all terms and conditions of the payment and/or its benefits, in violation of NYLL § 193 and its regulations.

94. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unlawfully deducted wages, liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to NYLL §§ 198 and 663.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

95. Declare Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under the TVPA, FLSA, NYLL, and New York Social Services Law;

96. Grant judgment to Plaintiffs on their TVPA claims and order Defendants to pay to Plaintiffs all damages to which Plaintiffs are entitled under the TVPA;

97. Grant judgment to Plaintiffs on their FLSA claims and order Defendants to pay to Plaintiffs all wages owed and all damages to which Plaintiffs are entitled under the FLSA;

98. Grant judgment to Plaintiffs on their NYLL claims and order Defendants to pay to Plaintiffs all wages owed and all damages to which Plaintiffs are entitled under the NYLL;

99. Grant judgment to Plaintiffs on their labor trafficking claims under the New York Social Services Law and order Defendants to pay to Plaintiffs all damages to which Plaintiffs are entitled under that law;

100. Award Plaintiffs all damages to which they are entitled;

101. Award Plaintiffs reasonable attorneys' fees, costs, and interest; and

102. Award Plaintiffs such other legal and equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

*/s/ Maureen Hussain*

Maureen Hussain
Cristina Brito
Worker Justice Center of New York
245 Saw Mill River Road, Suite 106
Hawthorne, NY 10532
(845) 331-6615
mhussain@wjcny.org
cbrito@wjcny.org

**ATTORNEYS FOR THE PLAINTIFFS**

Dated: September 27, 2024